```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

ANGEL MARTINEZ,                        :

                    Petitioner,        :

          - against -                  :

DENNIS BRESLIN,                        :

                    Respondent.        :

- - - - - - - - - - - - - - - - - -x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/29/09

**MEMORANDUM DECISION**

07 Civ. 8671 (DC)

**APPEARANCES:**    FRANZLAU DRATCH, P.C.
                    Attorneys for Petitioner
                         By: Stephen N. Dratch, Esq.
                    233 Broadway, Suite 2701
                    New York, New York  10279

                    ROBERT T. JOHNSON, ESQ.
                    District Attorney, Bronx County
                    Attorney for Respondent
                         By: Christopher Blira-Koessler, Esq.
                             Assistant District Attorney
                    198 East 161st Street
                    Bronx, New York  10451

**CHIN, District Judge**

          Petitioner Angel Martinez brings this petition for a
writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Martinez was
convicted by a jury of first-degree manslaughter in the Supreme
Court of the State of New York, Bronx County.  He was sentenced to
a term of imprisonment of ten years.

          Martinez challenges his conviction on the following
grounds: (1) the evidence was legally insufficient to support his
conviction, and (2) the trial court erred in refusing to submit
third-degree assault as a lesser-included offense of first-degree
manslaughter.  For the reasons set forth below, the petition is
denied.

This is a companion case to <u>Fernandez v. Smith</u>, which was brought by Martinez's cousin, Christopher Fernandez ("Christopher"), based on the same facts and same trial in the Supreme Court, Bronx County.  I granted Christopher's habeas petition.  <u>See</u> <u>Fernandez v. Smith</u>, 558 F. Supp. 2d 480 (S.D.N.Y. 2008).  I accepted Martinez's petition as a related case.

### BACKGROUND

### A.   The Facts

On June 30, 2001, Martinez got into a "commotion in the street" with Anthony Santiago and several other youths.  (Trial Tr. at 32-33, 298-99).  They threw "fists" at each other.  (<u>Id.</u> at 299).

Martinez's cousins Christopher and Carlos Fernandez ("Carlos") pulled up in their car and saw that Martinez was in the middle of a fight.  (<u>Id.</u> at 32, 299).  Carlos testified that:

> I saw about three or four youths, at least they
> looked like they were swinging, at least one of
> them were swinging at Angel and they were in
> the middle of the street so we couldn't go and
> Angel looked like he had been hit.

(<u>Id.</u> at 32).  Carlos testified that Martinez's chest was "like red" and that "he looked like he had scratches on him."  (<u>Id.</u>).  Martinez also looked "really scared, really scared."  (<u>Id.</u> at 33).

Christopher, who was driving, yelled at Martinez to get in the car; Martinez did so, and "the kids ran off."  (<u>Id.</u> at 33-34).  The three proceeded to try to go home and Martinez was "visibly upset."  (<u>Id.</u> at 35).  Martinez then saw Santiago running up the block and wanted to go after him.  (<u>Id.</u>).  Christopher and Carlos tried to dissuade Martinez but Martinez "wanted to go and

get them, and so Chris paused for a second and then he drove off" after Santiago. (Id.). Christopher slowed the car down, and before it came to a complete stop, Martinez jumped out. (Id. at 40). Immediately upon exiting the car, Martinez began hitting Santiago. (Id. at 160). Christopher then got out of the car and walked over, initially trying to hold Martinez back. (Id. at 42). Soon thereafter, Christopher started hitting Santiago as well, striking him in the head with an object, apparently a flashlight, four or five times. (Id. at 42-43, 155-56, 160). Carlos called out to Martinez and Christopher, telling them to come back to the car. (Id. at 156). Martinez pulled Christopher away and they both got back into the vehicle and drove off, leaving Santiago lying on the ground in the middle of the intersection. (Id. at 45, 156).

A bystander called the police. She walked over to Santiago, who rolled over onto his back, bleeding. (Id. at 156-57). She stood over him, in the intersection, to make sure that no cars hit him, and waited for the police to come. (Id. at 157).

The police arrived on the scene at approximately 3:20 a.m. and found Santiago lying on his back, with an apparent head wound and cuts and abrasions on his face. (Id. at 96). Santiago appeared to be intoxicated, as his eyes were glassy and he had the smell of alcohol on his breath. (Id. at 97). Emergency medical services arrived, treated Santiago, and took him to Lincoln Hospital in the Bronx. (Id. at 99-100). When he arrived, he was alert and oriented (id. at 610-11), but exhibited signs of intoxication (id. at 612). In fact, he was intoxicated, as his blood alcohol level exceeded the legal level of intoxication in New

-3-

York.  (<u>Id.</u> at 594, 612).  The intoxication might have led to his
not being properly treated, because the symptoms associated with
intoxication are similar to those associated with head injuries
such as those sustained by Santiago.  (<u>Id.</u> at 578, 609-12).  His
condition deteriorated, and he died as a result of the internal
bleeding caused by the blows to his head.  (<u>Id.</u> at 574).  He was
pronounced dead at 5:55 a.m. on June 30, 2001.  (<u>Id.</u> at 555).

## B.   **Prior Proceedings**

### 1.   **The Trial Court**

#### a.   **The Indictment**

Martinez and Christopher were indicted in the Supreme
Court of the State of New York, Bronx County, on November 16, 2001
for manslaughter in the first and second degrees.  (Blira-Koessler
Aff. ¶ 5).  On May 13, 2002, they were further indicted for two
counts of murder in the second degree after additional evidence was
presented to a second grand jury.  (<u>Id.</u>).

#### b.   **The Trial**

Trial commenced on September 10, 2003, before Justice
Joseph Fisch and a jury.  (Trial Tr. at 1).  In its opening
statement, the prosecution declared that "[t]he People will prove
to you [that defendants] intended to cause [Santiago's] death and
they did cause his death by literally beating the life out of him."
(<u>Id.</u> at 12).

The prosecution argued its case on a theory that Martinez
acted in concert with Christopher and caused Santiago's death.  The
jury was instructed that when a defendant "acted with the state of

-4-

mind required for the commission of the crime and . . . solicited, requested, commanded, importuned or intentionally aided another person to engage in that crime," that defendant was criminally liable for the conduct of another.  (Id. at 788).  The jury was also instructed that "the extent or degree of the defendant's participation in the crime does not matter" once it was proven beyond a reasonable doubt that he is criminally liable for the conduct of another.  (Id.).

Following the lawyers' summations, the court charged the jury on September 22, 2003.  (Id. at 678-768, 770-807).  The jury was presented with four counts against both defendants:  two counts of murder (intentional murder and depraved indifference murder) and manslaughter in the first and second degrees.  (Id. at 674).

Count one charged the defendants with murder in the second degree, based on an intentional murder theory.  N.Y. Penal Law § 125.25(1)(intentional murder).  The court instructed the jury that if it found the defendant it was considering guilty on count one, its deliberations were complete as to that defendant, but that if it found the defendant not guilty on count one, it was then to consider count two.  (Trial Tr. at 790-91).  Count two also charged murder in the second degree, but based on a depraved indifference theory.  N.Y. Penal Law § 125.25(2)(depraved indifference murder).  The court then instructed the jury that if it found the defendant it was considering guilty on count two, its deliberations were complete, but that if it found the defendant not guilty on count two, it was to consider count three, which charged manslaughter in the first degree.  (Trial Tr. at 793).  The court explained that a

-5-

defendant committed manslaughter in the first degree "when with intent to cause serious physical injury to another person, he causes the death of such person." (Id. at 794). N.Y. Penal Law § 125.20(1).

Finally, the court instructed the jury that if it found the defendant it was considering guilty on count three, its deliberations were complete, but that if it found the defendant not guilty on count three, it was to consider count four, which charged the defendants with manslaughter in the second degree. (Trial Tr. at 795). The court explained that a person was guilty of manslaughter in the second degree when he "recklessly causes the death of another person." (Id.). N.Y. Penal Law § 125.15(1).

On September 23, 2003, the jury returned its verdict. It found Martinez not guilty on counts one and two and guilty on count three, manslaughter in the first degree. (Trial Tr. at 826). The jury found Christopher, the co-defendant, not guilty on count one and guilty on count two, the depraved indifference murder count. (Id. at 825). On December 17, 2003, Martinez was sentenced to a term of 10 years for his conviction of manslaughter in the first degree.

## 2. **The Appeals**

On appeal to the Appellate Division, Martinez argued that (1) the trial court improperly refused to include third-degree assault as a lesser offense, (2) the evidence was legally insufficient to prove first-degree manslaughter, (3) the conviction was against the weight of the medical evidence, and alternatively, (4) the sentence imposed was harsh and unduly excessive in light of

-6-

various mitigating factors.  (Resp't Ex. 1).  In opposing the
appeal, the People argued that defendant's guilt of first-degree
manslaughter was proven beyond a reasonable doubt, there was no
reasonable view of the evidence to support a jury charge for third-
degree assault and Martinez's sentence was fair and proper.
(Resp't Ex. 2).

On June 29, 2006, the First Department unanimously
affirmed Martinez's conviction, holding that "[t]he verdict was
based on legally sufficient evidence and was not against the weight
of the evidence," and "the court properly declined to submit [a
third-degree assault] charge."  People v. Martinez, 30 A.D.3d 353,
353 (1st Dep't 2006).  On October 24, 2006, a judge of the Court of
Appeals denied Martinez leave to appeal.  People v. Martinez, 7
N.Y.3d 868 (2006).

### 3. The Habeas Petitions

Christopher petitioned this court for a writ of habeas
corpus, which was granted on June 5, 2008.  The writ was granted
based on changes in the law governing the depraved indifference
murder statute under which Christopher was convicted.  As a matter
of law, the evidence was insufficient to support a conviction for
depraved indifference murder.  The conviction was vacated and the
case was remanded to state court for further proceedings in
accordance with the changes in law defining "depraved
indifference."  See Fernandez, 558 F. Supp. 2d at 504.  These
changes in the law are not applicable to Martinez's petition, as he
was not convicted of depraved indifference murder.

-7-

On October 9, 2007, Martinez filed this petition for a writ of habeas corpus, raising two issues:  (1) the legal insufficiency of the evidence to support a first-degree manslaughter conviction and (2) the trial court's purported error in refusing to submit a third-degree assault charge to the jury as a lesser-included offense.

**DISCUSSION**

## A.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to any judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2).

"'[C]learly established Federal law' in § 2254(d)(1) 'refers to the holdings, as opposed to the dicta,'" of Supreme Court decisions as of the time of the relevant state-court decision.  Carey v. Musladin, 127 S. Ct. 649, 653 (2006) (quoting Williams, 529 U.S. at 412) (internal quotations omitted). Moreover, AEDPA has been interpreted to require a petitioner to

-8-

show not only that clearly established federal law was erroneously or incorrectly applied, but that the application was unreasonable. See Williams, 529 U.S. at 411; see also Lockyer v. Andrade, 538 U.S. 63, 66 (2003); Bell v. Cone, 535 U.S. 685, 688 (2002).  As the Second Circuit has explained, "[a] state court decision is 'contrary to' Supreme Court precedent only if it either 'arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law' or 'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [the opposite result].'"  Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001) (quoting Williams, 529 U.S. at 405).  The standards set forth by AEDPA apply to all habeas petitions filed after the state's effective date of April 24, 1996. See Boyette v. Lefevre, 246 F.3d 76, 88 (2d Cir. 2001) (citing Williams, 529 U.S. at 402).

AEDPA also specifies the applicable standard for federal review of state court factual findings:  a petitioner must demonstrate that a decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  In habeas proceedings, a "determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting this presumption "by clear and convincing evidence."  Id.

B.    **Petitioner's Claims**

  1.    **Insufficiency of Evidence**

    a.    **Applicable Law**

When reviewing a habeas petition claiming that the evidence at trial was insufficient to support a conviction, courts ask whether the evidence "could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979). "[T]he findings of the state court are presumptively correct and entitled to a high degree of deference as that court was in the best position to view the credibility of the witnesses and all of the facts as they were adduced [at trial]." Santos v. Zon, 206 F. Supp. 2d 585, 589 (S.D.N.Y. 2002) (quoting Smithwick v. Walker, 758 F. Supp. 178, 184 (S.D.N.Y. 1991)). As the Court noted in Jackson, the question is not whether a court believes that the evidence at trial could support a finding of guilt beyond a reasonable doubt, but whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307 at 318-19. Accordingly, when bringing a claim of insufficiency of the evidence, the "[p]etitioner bears a 'very heavy burden' in convincing a federal habeas court to grant a petition on the grounds of insufficient evidence." Panapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002).

Under New York law, a person is guilty of first-degree manslaughter when "[w]ith intent to cause serious physical injury to another person, he causes the death of such person or of a third person."  N.Y. Penal Law § 125.20(1).

A person need not directly cause the death of another to be criminally liable for first-degree manslaughter.  Under New York law, a person may be criminally liable for the conduct of another.

> When one person engages in conduct which
> constitutes an offense, another person is
> criminally liable for such conduct when, acting
> with the mental culpability required for the
> commission thereof, he solicits, requests,
> commands, importunes, or intentionally aids
> such person to engage in such conduct.

N.Y. Penal Law §20.00.

A person whose criminal liability is premised upon the conduct of another person may be held liable even though the other person is not criminally liable for the offense, or is not prosecuted for or convicted of the offense.  N.Y. Penal Law § 20.05(1) & (2); see, e.g., People ex rel. Guido v. Calkins, 9 N.Y.2d 77 (1961) (holding that one who "aids and abets" in committing a crime can be prosecuted even if principal has been acquitted).

### b.   **Application**

#### i.   **Evidence Supporting Manslaughter Conviction**

Here, there was sufficient evidence in the record for a rational trier of fact to find, beyond a reasonable doubt that Martinez was guilty of first-degree manslaughter.  The issue is whether the People presented sufficient evidence to establish

Martinez's liability for Santiago's death on an accessorial or "acting in concert" theory of liability under N.Y. Penal Law § 20.00.[1]  I conclude that, based on the evidence presented at trial, a rational juror could have found beyond a reasonable doubt that Martinez acted in concert with Christopher causing serious physical injury to Santiago, resulting in his death.

Although the evidence at trial showed that Christopher administered the blows that directly caused Santiago's death, a reasonable jury could have reasonably concluded that Martinez was an active and willing participant from start to finish.  Eyewitness testimony established that Martinez initiated the chase of Santiago (Trial Tr. at 35); he began the attack on Santiago (id. at 160); and he continued the assault even after Christopher began striking deadly blows to Santiago's head with what apparently was a flashlight.  (Id. at 42-43, 155-56, 160).  Although Martinez and Christopher's actions were not planned beforehand, the totality of the evidence permits only the conclusion that Martinez "knowingly participated and continued to participate even after his companion's intentions became clear," supporting the jury's conclusion that Martinez "shared a 'community of purpose' with his companion."  People v. Allah, 71 N.Y.2d 830, 832 (1988).

Martinez argues that the weight of the medical evidence shows he could not have caused Santiago's death, as the medical examiner concluded Santiago died from trauma sustained from a

---

[1]  New York cases treat the term "acting in concert" as functionally equivalent with accessorial liability under N.Y. Penal Law § 20.00.  See People v. Sanchez, 57 A.D.3d 1 (1st Dep't 2008).

-12-

beating by a blunt instrument and only Christopher hit Santiago with such an item.  Whether Martinez administered the fatal blows that directly led to Santiago's death, however, is immaterial. Under New York Law, whether one is the actual perpetrator of the offense or an accomplice is irrelevant for these purposes.  People v. Rivera, 84 N.Y.2d 766 (1995).  There is no distinction between liability as a principal and criminal culpability as an accessory. See People v. Katz, 209 N.Y. 311 (1913).  Although there might have been insufficient evidence to support a first-degree manslaughter conviction on a theory that Martinez alone caused Santiago's death, the jury could reasonably have found that Martinez, "with intent to cause serious physical injury to another person," acted in concert with Christopher and caused the death of Santiago.  N.Y. Penal Law § 125.20(1).  This is sufficient for criminal liability.

Contrary to petitioner's arguments, direct proof of an express agreement or statement between Christopher and Martinez is not required to show that Martinez acted either as a principal or an accessory to a crime.  Jones v. Keane, 250 F. Supp. 2d 217, 238 (W.D.N.Y. 2002); People v. Alvarez, 389 N.Y.S.2d 980, 987 (N.Y. Sup. 1976).  In fact, "[t]he intent to commit a crime may be implied by the act itself, or it may be established by the defendant's conduct and the surrounding circumstances."  People v. Stevens, 26 A.D.3d 396, 397 (2d Dep't 2006) (citation omitted).

The testimony showed that Martinez and Christopher were striking Santiago simultaneously.  Additionally, once Christopher began hitting Santiago in the head with a weapon, Martinez did not

-13-

stop his assault or try to stop Christopher. Instead, he continued to kick Santiago, leaving him prone and defenseless on the ground. The evidence was sufficient to allow a reasonable jury to infer that even if Martinez did not deal the fatal blow to Santiago, he "solicit[ed], request[ed], command[ed], importune[d], or intentionally aid[ed]" Christopher in causing the death of Santiago. N.Y. Penal Law § 20.00. Furthermore, the testimony established that Martinez pulled Christopher and the two fled the scene together by car leaving the victim in the road. The fact that Martinez and co-defendant fled together provides further evidence tending to corroborate a community of purpose. People v. Skinner, 269 A.D.2d 202, 203 (1st Dep't 2000).

          People v. Peralta is instructive. There, the First Department held that evidence showing the defendant punched and kicked the victim as he was lying helpless on the ground after the co-defendant had hit him on the head with a beer bottle established defendant's intent to cause serious physical injury and his accessorial liability for the death of the victim. The defendant's first-degree manslaughter conviction was unanimously affirmed after the court concluded that the verdict was based on legally sufficient evidence and was not against the weight of the evidence. People v. Peralta, 1 A.D.3d 115, 116 (1st Dep't 2003). Here, as in the Peralta case, it was the co-defendant Christopher who hit the victim Santiago on the head with the weapon that caused his death. Martinez, like Peralta, did not administer the blow that led to Santiago's death, but he did continue to kick Santiago as he lay

-14-

helpless on the ground.[2]  As in Peralta, the conviction here should be upheld.  Martinez has not met his heavy burden of showing that the evidence was insufficient to support his conviction.

Finally, the difference in Martinez and Christopher's verdicts does not imply a lack of acting in concert.  The inconsistency may be based on mistake, compromise or lenity by the jury and does not warrant the conclusion that Martinez seeks to reach.  See United States v. Powell, 469 U.S. 57, 65 (1984). Furthermore, it is legally plausible, under an accomplice theory of liability, for a defendant to be guilty of manslaughter and his co-defendant to be guilty of murder because accomplices may be convicted of differing degrees of homicide depending on each one's specific intent.  See Maiorino v. Scully, 746 F. Supp. 331 (S.D.N.Y. 1990); N.Y. Penal Law §20.15.  Even when a jury acquits a co-defendant, it does not preclude the imposition of accomplice liability on the defendant.  N.Y. Penal Law § 20.05(2); People v. Thomas, 5 A.D.3d 305, 307 (1st Dep't 2004).  Similarly, the overturning of Christopher's conviction on habeas corpus does not affect the validity of Martinez's conviction.

## 2.    **Failure to Submit Jury Charge for Third-Degree Assault**

### a.    **Applicable Law**

To establish entitlement to a lesser-included offense charge, a defendant must show that "(1) it is theoretically impossible to commit the greater crime without committing the

_____

[2] In fact, Christopher was convicted of depraved indifference murder, although, as noted, I held that he could not have committed depraved indifference murder as a matter of law, as he acted intentionally -- not indifferently -- when he attacked Santiago.

-15-

lesser and (2) a reasonable view of the evidence would permit the jury to find that the defendant had committed the lesser, but not the greater, offense." Rice v. Hoke, 846 F.2d 160, 165 (2d Cir. 1988); see also Keeble v. United States, 412 U.S. 205, 208 (1973); N.Y. Crim. Proc. Law § 300.50(1).

The standard for habeas review of state jury instructions "is not whether the state court's 'instruction is undesirable, erroneous, or even universally condemned.'" Wright v. Smith, 569 F.2d 1188, 1191 (2d Cir. 1978) (quoting Cupp v. Naughten, 414 U.S. 141, 146-47 (1973)) (quotations omitted). Errors in state jury charges are questions of state law and therefore are not reviewable on a petition for a writ of habeas corpus absent a showing that the jury charge deprived the defendant of a federal constitutional right. See Blazic v. Henderson, 900 F.2d 534, 540 (2d Cir. 1990); United States ex rel. Stanbridge v. Zelker, 514 F.2d 45, 50 (2d Cir. 1975), cert. denied, 423 U.S. 872 (1975). For an error in state law to violate the federal constitution and deprive petitioner of a constitutional right, the error "by itself [must have] so infected the entire trial that the resulting conviction violates due process.'" Blazic, 900 F.2d at 541 (quoting Cupp, 414 U.S. at 147).

In Beck v. Alabama, the Supreme Court held that where the evidence warrants such a charge, due process requires a trial court to submit jury instructions on lesser-included offenses in capital cases. 447 U.S. 625 (1980). Both the Supreme Court and the Second Circuit, however, have declined to extend this requirement to non-

-16-

capital cases.  See id. at 638 n. 14; Jones v. Hoffman, 86 F.3d 46, 48 (2d Cir. 1996); Knapp v. Leonardo, 46 F.3d 170, 179 (2d Cir. 1995).

### b.   **Application**

The trial court's refusal to submit third-degree assault as a lesser-included offense of first-degree manslaughter does not raise a federal constitutional claim reviewable on a petition for a writ of habeas corpus.  Without reaching a conclusion as to whether or not it is theoretically impossible to commit first-degree manslaughter without committing third degree assault, Martinez fails to satisfy the second prong of the two-part test explained in Rice.  Here, the theory of liability is based on the idea that Martinez and his co-defendant were acting in concert.  Martinez, although not the actual perpetrator, is liable for the acts of his co-defendant.  Under an acting in concert theory of liability, a reasonable view of the evidence would not permit the jury to find that Martinez had committed third-degree assault but not first-degree manslaughter.  Therefore, Martinez has not established that he was entitled to a third-degree assault charge.

### CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied.  Because petitioner has not made a substantial showing of the denial of a constitutional right, I decline to issue a certificate of appealability.  See 28 U.S.C. § 2254 (as amended by AEDPA).  I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from this decision would not be in

-17-

good faith.   The Clerk of the Court is directed to enter judgment
accordingly and to close this case.

        SO ORDERED.

Dated:    New York, New York
          July 28, 2009

                                        DENNY CHIN
                                        United States District Judge

-18-